Case is InVue Security Products v. Mobile Tech, 2018-2202. Mr. Harvin, good morning. Thank you, Your Honor. May it please the Court, InVue would like to focus on the argument of two questions subject to the Court's questions. Number one, that the Board erred by finding that MTI's ultimate parent, MTHI, was not a real party in interest, largely because it applied the wrong legal standard. Does Inquozo bar your real party in interest argument? I'm sorry, Your Honor? Doesn't it quote the Supreme Court's decision, Inquozo Speed Tech, bar your real party in interest argument? Inquozo, Your Honor, no, we submit it does not, that as this Court has noted twice, that the question of whether 312A-2 decisions, the Board's decisions on RPIs are appealable is an open question. We think the proper rule is that it is appealable for a couple of reasons. Well, Dick probably only said that those cases are appealable where the time bar, the statutory time bar is implicated. And here, there's no implication to the statutory with respect to the statutory time bar, because you didn't sue the other entities that you're now claiming are real parties in interest, right? We did not sue those entities, Your Honor. We would claim that, depending now with the current law being, the Board would apply certain factors to whether they would allow the petition to be amended without changing the filing date. We would contend that it should be time barred if it is amended. That the time bar should kick in. You never even argued in your district court suit that these other entities were, that you should pierce the court with bail as to those other entities, or that they, in fact, were controlling the activities of the petitioner here, did you? I'm sorry, did we allege that in the district court action? Right. No, we are not counsel to the district court action, but I do not believe that's been alleged or an issue. I would, I'd like to go back to your original point about why we believe it is appealable, but I'd also like to address the issue of actual control versus control, because in our opinion . . . Well, I'm trying to understand exactly what your position is here. You concede that the petition was not subject to the statutory time bar, because the only one sued in district court sued, or filed the petition, or sought institution within one year, right? Not initially, correct. It was not initially. They should have, but they did not name the parent as a real party in interest. Therefore, to try to amend it now, absent the board's discretion to say the filing date has not changed, would be a time bar. And we have not understood, Your Honors, the court's decisions about whether 312A2 is appealable to be contingent on whether there is a 315B time bar implicated, particularly by the original parties, for a couple of reasons. The, as the court has stated, there is a presumption that administrative agency decisions are appealable unless Congress clearly states otherwise. But what the statute states, 314D, is that decisions under this section are not appealable, and the court has focused . . . Didn't we say in Maine Firearms just recently that you, in fact, that the board, in fact, when a time bar is not implicated, does have the right to allow amendment and to decide whether its rule with respect to backdating applies? Yes, Your Honor. Well, you essentially did. You said it was within the board's discretion to allow an updating of the RPI, of the mandatory notices, without affecting the time bar. So under our understanding is thus, if the court agrees on the RPI issue that MTIH MTHI, the ultimate parent, should have been named, that it would be remanded back to the board for further considerations about whether that should be allowed. And a couple of other points about 314 and 312, Your Honor. This Court is focused on the decision, the preliminary decision by the director whether there's, whether the petition shows a reasonable likelihood of success in 314A, and that that is the essence of what's covered by the non-appealability of a decision under this section. And also it's different from the RPI because, as the Court has noted, ultimately the decision on the merits of the patent issue, once there's a final written decision, are appealable. RPI issues, if the board has the right to make the decision and it's not appealable, they will not be appealable. And particularly the PTAB allowed in view to file something called a motion to terminate. Right? Yes. Okay. And in view filed motions in both the IPRs and the present appeal, but you didn't argue that the 315B one-year time bar applied at all, did it? That's what Judge O'Malley asked you. Yes, we did argue that it would apply now to an amendment to the date. That's why we argued that the petition should be terminated. We did not argue that it was not a case where the ultimate parent, MTHI, was a party in prior litigation. But we did argue that, as we say in a brief, in a footnote, we did argue and we do argue that properly we You argued in the motions to terminate that the 315B time bar applied, one-year time bar applied? Because it's too late to amend. Therefore, it should be terminated. All right. Moving on. Do I understand that it's really only Claim 7 that's at issue anymore? Yes, Your Honor, we concede that based on recent Federal Circuit affirmance of a board decision on a related patent, that either the other claims, it's raised judicata as to the validity of the claims, or they have mooted the issue as a practical matter as to the claims. So we are only contesting now the decision as to Claim 7. And so you're sort of passing reference to Claim 6. You agree that that was not preserved below and it really developed in your briefing. Do you agree with that now? We do not agree it was not preserved below, but we do agree, well, I take that back. As to one of the elements, Denison, Rothbaum, and Ott, it was preserved. But we did not appeal the decision on Claim 6 as to the Pachita-Garner combination. So we agree that. Okay. So what's your best argument as to why Claim 7 should be preserved? Well, they essentially boil down to, Your Honor, that the board relied on very conclusory unsupported testimony by the MTI's expert that reflects hindsight and ignores the fact that it requires changing the devices in the Denison-Rothbaum-Ott combination. But doesn't the board have the right to decide whether or not that expert testimony was credible? Well, credibility is one thing, and a conclusory is I submit another thing. And the factor that it ignores is to put the recoiler of Ott into the Rothbaum strip or housing, which is, the parties have always litigated, is the security device in the combination. How do you define conclusory? Without any analysis or support, just saying this can be done, here's a reason for it, no support in prior art, et cetera. An example is saying, well, when Rothbaum is the principal reference modified by Denison on the other claims, you bring in a couple elements from Denison. MTI makes an alternative argument that literally consists of a few lines in one sentence that, well, you could also, instead of including the Ott recoiler in the Rothbaum strip or housing, you could just do away with the strip or housing and use some portion, some undefined portion of the security device in Ott, not saying what it is, not saying how it functions. So now that all the claims have been litigated based on Rothbaum modified by Denison, now we're just going to, in one sentence, we're going to, the experts are going to say, oh, we just put an undefined security device from Ott into this combination. Totally changes it, no explanation of how, no explanation of what part. And on a detail on that, Your Honor, MTI says we did not respond to that. In our briefing we did, and that's at Appendix 2296. But MTI says, well, you can put an Ott into Rothbaum, but that requires fundamentally changing the Rothbaum security device. You have to do away with the three-way switch with Rothbaum itself touts as important. MTI says, well, the case law is just because Pryorak talks about advantages and disadvantages, you don't ignore the advantages. But we submit this is a little different situation. This is an N. Ray Rathe situation where MTI is proposing a combination that fundamentally changes the operation and structure of Rothbaum. Similarly, with Uchida and Garner, you know, if the Uchida teach, excuse me, Garner teaches a specific recoiler system with most, with a wire that usually has an eyelet and a pin that attaches through the shoe to the security tag, which is defined, which up to now, MTI has defined the tag as a security device. It's set up where the eyelet and the wire is between the recoiler and the security device. That's how you secure the wire and the eyelet. Now they propose doing away with that and just putting the recoiler inside, inside the Uchida tag. But didn't the board specifically find that there were only a limited number of placement options with respect to the recoiler? That is true, Your Honor, but there's no, there's no evidence of how it would be done without, without again changing the functionality of Garner, which, which is Garner discloses a specific way to do it, specific way to secure the recoiler to the tag and the wire in between. And now they're proposing fundamentally changing that without any explanation how. Well, they're not really altering Garner. They're saying that Garner provides the motivation to use a recoiler with Uchida. That's different, right? It is different, but again, there's no discussion of how you would do it or, or how it fit in. How are you going to secure the, I mean, you're going to cut the wire now, which would not be a practical solution. This is divine, you know, it's divine. It's, excuse me, Garner describes it where you cannot easily decouple the products from the wire. But how are you going to do this where you cannot easily decouple them, but yet, you know, you can separate and put it together. There's no discussion at all. It's simply, again, at some point, you know, this is the danger of N. Way Westlaw of saying, well, this is a, this is an element of prior art. Therefore you can put it in. I mean, at some point this gets to be, we submit very conclusion. I see I'm in my rebuttal time, unless the court has any other questions. We will save it for you, Mr. Norman. All right. Good morning, your honors. May it, may it please the court. I'm looking first at the reviewability issue. In view argues that the petition was insufficient under section 312. A2. Under Quozo, one cannot appeal based on the insufficiency of the IPR petition. In Quozo, the Supreme Court indicated the PTO's final decision cannot, quote, be unwound under some minor statutory technicality related to its preliminary decision to institute inter partes review. But we have said that if an RPI determination implicates the time bar of 315B, it is appealable, right? It's not reviewable with respect to the sufficiency of a petition under 312A2. Rather, what's reviewable is the time bar under 315B, but 315B is not implicated in this case. The petition was filed just slightly more than four months after the patent issued. So under no scenario could the petition, the filing of the petition, or I should say 315B, could not have been implicated. Was 315B argued below? I'm, I'm, I don't recall. I'm uncertain whether it was, was argued in the motion to terminate. If those parent parties had been sued in the district court case, or if their argument had been made that they actually, um, that ultra virus, that, that they, or they tried to pierce the corporate veil as a respect to those parties, then we'd have a different scenario, right? We would have a different scenario because we're looking, then the court would be considering 315B. In other words, was there a party, a real party and interest who had been sued more than a year before the filing of the petition? Um, that, that can't be the case here. Nobody was sued. Nobody is, no, no other entity other than, uh, MTI has been sued. Um, as I say, the patent issued just four months before the filing of the petition. How does Main Pharma impact? Well, Main Pharma impacts it in that, um, well, I mean, under Main Pharma, uh, the court may decline to consider the reviewability issue if the court can otherwise affirm the board. Uh, that's, that's my reading of, um. So we dodge the issue in Main Pharma is what you're saying? You, you can dodge the issue according to Main Pharma if you can otherwise affirm, uh, the issue. And in, in this particular case, the board should be affirmed. So, and I can, I can go to those points. On the other hand, yes, I would like the reviewability issue decided as well, but. But even if we said it was reviewable, your position is that the board didn't err as a matter of fact in concluding that these are not RPIs. Well, even before we get to that issue, yes, I, I do say that as a matter of fact, the board did not, um, err. That applying the, um, you know, applying this, the, there is substantial evidence to support the board's finding concerning this issue. Um, but, but even before we get to that issue, we have the issue preclusion issue. Uh, collateral estoppel bars Inview's section 312A2 argument. The board's decision on Inview's motion to terminate addressed Inview's arguments for two IPRs here on appeal plus an IPR, uh, which Inview chose not to appeal. That IPR was IPR 2016-19-15. But was the RPI issue actually raised and decided in those prior IPRs? Yes. Yes. And exactly to the same extent because, um, it, it was all brief. The briefs were, uh, in substance, the briefs were on the RPI issue were identical. Uh, in fact, the board's, um, mo, uh, order on the motion to terminate addressed all three of these IPRs. The two IPRs in this particular case plus, um, plus the IPR that Inview chose not to appeal. And in particular, that is IPR 2016-19-15. Um, and, and so the issue was litigated to the same extent in all three IPRs and litigated by the same parties and counsel. And before even the same board and the, there was only one, um, decision rendered by the, by the board on the motions to terminate. And, and so this particular, uh, order on the motion to terminate addressed the very. What's your response to the, you know, friend's argument on the other side that says that, but it was never fully and fairly litigated because the board did not allow full development of the issue. Well, the board allowed discovery. They were, they took the deposition of the CEO of MTI, Chris Remy, um, with respect to document discovery. And that was the same with, with respect to all IPRs. The board just said, uh, well, you haven't in view. You haven't shown why you need additional discovery. Uh, you didn't, you didn't ask with particularity and in view chose not to come back to the board and ask for any additional discovery. They didn't ask for any additional discovery after the deposition of Mr. Remy. If they thought they needed some additional discovery, written discovery, they could have asked for it. They did not. They chose not to. Can you address your opposing counsel's argument that your experts, uh, testimony was entirely conclusory? So getting, when you say our expert, you're, so we're getting back, we're getting to the issue of, um, we're getting to the issue of, of claim seven. Uh huh. Okay. Well, with, with respect to claim seven, uh, the substantial evidence supports the board's finding of invalidity based on Uchida and Garner. And that's laid out in detail in, uh, the board's, uh, final written decision and including the evidence by the expert. The expert applied first of all, looked at the teachings of Garner, looked at the teachings of Uchida. Uh, Uchida, it pointed out that Uchida discloses a tag. And, and by the way, both Uchida and Garner relate to articles of clothing. Um, Garner in particular is looking at shoes. So it has, uh. Being able to. Right. Examine. Right. So both of them disclose a wire. They're both security devices. They both disclose a wire that goes around, that loops around an article of merchandise, you know, either an eyelet or a buttonhole. And so the, what, and, and so the expert pointed out the advantages or the desirability of having a retractor, uh, for things such as shoes, if you're going to use the Uchida device. And so it presented the logical reasons why he would combine them, uh, pointing out the similarity of the prior art references and, and then render the combination. Plus the combination itself is not at issue. The combination of Uchida and Garner is not at issue to begin with because claim six was rejected. I mean, yeah. Claim six was found to be unpatentable, um, on the combination of Garner and Uchida. And that was not appealed. So the obviousness to combine is not going to be at issue. So it's just going to be, what does that combination disclose? And so once you can make the combination of putting a, um, retractor or recoiler in Uchida, you have the, you have the claimed infection of claim seven. So then the, so the only other issue is just the board correctly named all real parties and, and interests. Um, and the board's decision support is supported by substantial evidence. Um, the, the issue to begin with, the issue is not whether these other entities might be previous. And although privies is maybe relevant in a 315 B determination, privies are not required to be named under 312 A2. So there's, it seems to us that in view seems to be merging a real party and interest issue with privy issue. Um, but in application for internet times, uh, the court said that the real party and interest issue is common law terminology and that common law principles, applying common law principles, uh, apparent holding company is not a real party and interest to a petitioner merely by virtue of being a parent company. So unless the parent company that has an immediate business that somehow implicates or is implicated by the patent, the parent company is not a real party and interest to the IPR. In here, the only company, the only MTI company that manufactures and sells products of any kind is MTI, uh, the petitioner. None of these related companies manufacture and sell any products or certainly, um, actually I don't know about Vestar. Um, I think that's true. But it's a, yeah, it's a private equity. Um, the, but as far as, uh, manufacturing and selling any products, uh, with respect to the accused product, uh, the only, the only company that does that is MTI. But should the board be required to undertake a, um, a piercing of the corporate bail analysis because just because a parent company doesn't manufacture the product doesn't mean they don't control the activities of the sub. The, an analysis was conducted though. Uh, a detailed analysis by the board. Uh, the board considered all of the evidence and came to the conclusion that the only real party and interest is MTI, that none of these other companies are real parties and interest. It considered all of the evidence submitted by InView. It submitted, it considered all the evidence submitted by MTI and it, and it rejected the argument that InView was making. It came to a different conclusion. Um, it concluded that the only person who was making the decisions concerning the IPRs, whether to file an IPR was Chris Remy, the CEO of MTI. Uh. That was based on his testimony. That's based on his testimony. On the record before us, we determined that MTI, MTI buyer and intermediate investor are not real parties and interest. Yes. Anything further? I have nothing further. Thank you. Thank you. Mr. Harbin has some rebuttal time. Yes. Thank you, Your Honor. Briefly, we did apologize. I don't have the record side, but it's page seven of the original motion to terminate. We did specifically side 315 and say it's too late. And in fact, after initially opposing adding the parent as an RPI, MTI said, we will agree if the board will allow the update of the notice without changing the filing date. Second, regarding the facts, I think it's important to look at the facts and to keep in mind, this is a closely held company. It's not a company with multiple quasi-independent subsidiaries, operating business. This is a closely held company with a collapsed structure. Mr. Remy, who testified, is actually employed by the parent, MTHI. He's not an MTI employee. He does not report to the board of MTI, the operating company. He reports to the board of MTHI, which is the only regularly operating board of all the entities in the chain. And two other senior officers of MTI are MTHI board members. It is a collapsed structure. And the fact that it is a holding company, the board seems to say that argues against finding RPI status. I think, again, if it was one thing with a holding company with multiple subs and true independence, maybe. But in this closely held situation, I think that argues for finding RPI. And if the court risks we submit eviscerating the RPI requirement, which is partly intended to protect patent owners from repeated suits from having meaningful effect, because at least closely held companies, if they don't have to report a closely held parent that's really controlling, clearly has the opportunity to control, then they can set up other subsidiaries and follow their actions. I finally wanted to make one other point. We do not think this is barred by collateral estoppel for two reasons. First, we did not have the chance to fully litigate it. It came up in the prior suit after the oral hearing had been held. We have been allowed only very limited discovery, and it was decided on very limited briefing. But more importantly, as a factor considered recently by this court in the power integration case, we did not have the incentive to appeal the RPI issue. That is a different patent that there's not, as we've put in the briefing, a 315B issue because we have not... There was one additional patent, but many of the claims of these patents were also an issue, right? Not in the other RPI. It was another patent that has not been asserted against MTI. Therefore, we had no incentive to appeal the underlying finding on the patent issues by the Board of Invalidity. And we submit the court should be wary of requiring parties to file appeals on non-merits issues when they don't have a motive to appeal the merits issues. Unless, Your Honor, does somebody have any other questions? Thank you, Counsel. Thank you. Case is submitted.